This matter came before me on an order of rereference. The matter was heard by Vice-Chancellor Fielder and after the hearing rereferred to me because of the Vice-Chancellor's illness. By stipulation of counsel the transcript of the testimony and exhibits were submitted to me together with the briefs. Counsel, however, argued the matter orally.
The bill of complaint is for partition and alleges that Schenck is seized of an undivided 44/106th part of a farm and that the defendants, three of the sons of the defendant, James Mercer Davis, Sr., are each seized of a 62/318th part thereof subject to the life estate of Ann V. Holbrook (formerly Roydhouse). I am unable to determine how the various shares were computed.
The life tenant, after the filing of the bill of complaint, for reasons unknown to me, withdrew as a party complainant and an order was entered dismissing the bill as to her. She died on November 5th, 1940, which terminated her life estate.
On April 15th, 1941, Schenck filed an amended bill which is also a bill for partition and therein charged James Mercer Davis, Sr., with a breach of trust and prayed for a decree establishing an equitable interest in Schenck, the extent of which is to be determined by the court.
It appears from the evidence that prior to 1910 one Roydhouse was the owner of a certain farm in Burlington County subject to the life estate of his wife. In the year 1910 he conveyed his interest to a third party who in turn conveyed the farm to his wife thereby vesting in her the record title to the fee. In 1911, James Mercer Davis, Sr., the principal defendant herein and a member of the bar of this state, was retained by one Haines to bring a suit against Mr. Roydhouse on a promissory note. On December 23d 1911, Mr. Davis, Sr., obtained a judgment for about $2,000. Thereafter, upon the recommendation of the said Haines, the complainant, Schenck, asked Mr. Davis, Sr., to bring suit against Roydhouse on a note which he held. Mr. Davis agreed to do so *Page 83 
provided Schenck recognized the priority of the Haines judgment and the corresponding paramount duty which Davis owed Haines by reason of the judgment which he had obtained for him. Schenck was satisfied with the position which Davis took and thereupon Davis, on July 3d 1912, obtained a judgment for about $3,400 in favor of Schenck against Roydhouse. Mr. Davis received no fee from either client as he had taken both on a fifty per cent. contingency basis.
On January 2d 1912, Davis filed a creditor's bill to set aside the conveyance to Mrs. Roydhouse. On final hearing Vice-Chancellor Leaming held that the conveyance was not made in fraud of creditors but was merely for the purpose of correcting an error made by the scrivener who had limited the first conveyance to a life estate rather than passing the title in fee to the wife. An appeal was taken to the Court of Errors and Appeals and the findings of Vice-Chancellor Leaming were reversed. See Haines v. Roydhouse, 83 N.J. 675, 677.
On March 4th, 1915, Mr. Davis obtained an order admitting Schenck as a party complainant in the Chancery suit. On February 24th, 1915, a final decree was entered in accordance with the direction of the decree of reversal. On October 18th, 1915, an order was advised amending the form of the final decree. The effect of the decree, as amended, preserved in Mrs. Roydhouse her life estate and left the remainder in her husband subject to the liens of the Haines and Schenck judgments.
No attempt was made to sell the interest of Roydhouse in the remainder, for the reason that it seems to have been determined that no benefit would accrue to the judgment creditors because of the intervening life estate.
Some years later Haines died and the title to his judgment passed to his widow and upon her death it passed to her executors. Schenck never communicated with Davis and his whereabouts were unknown to Davis for many years. Roydhouse left this jurisdiction. Mrs. Roydhouse obtained a divorce from him and subsequently remarried. During all this time, Mrs. Roydhouse continued in possession of the farm.
Sometime about March, 1932, Mr. Davis learned that *Page 84 
Schenck was living at Vineland, New Jersey, and wrote him under date of March 5, as follows:
"Dear Mr. Schenck:
I wish you would come to see me at your earliest convenience, * * *."
Schenck neither called to see Mr. Davis nor communicated with him although he admits that he received the letter.
Davis thereupon proceeded to revive both the Haines and the Schenck judgments. On November 25th, 1932, the executors of Mrs. Haines assigned their interest in the Haines judgment to Davis. Davis thereupon directed the sheriff to sell under the judgment, as follows: "I want you to sell under the Haines Judgment first. It is older." The sheriff thereupon advertised under both executions which had been issued and fixed December 1st, 1932, as the date of sale.
Davis, in company of Elizabeth B. Cole, a member of the bar and an employee in his office, called upon Mr. Schenck at Vineland. Davis told Schenck that he had revived both judgments, had issued executions and that the sale thereunder would be held on December 1st. He informed Schenck that the first sale would be under the Haines judgment and that he, Davis, as the owner of that judgment intended to bid at the sale to protect his interest. He stated that in his opinion it was doubtful whether the property would bring enough to satisfy the amount then due under the Haines judgment and urged Schenck to be present at the sale. At the time Schenck did not appear to be interested and Davis thereupon offered to either buy Schenck's judgment for $500 or to sell him the Haines judgment for $500 which was the amount that Davis had paid therefor. Schenck refused both proposals. After advising Schenck repeatedly to be present at the sale, Davis and Elizabeth Cole left. Schenck's testimony relative to this conversation is that Davis did call upon him and offered to sell the Haines judgment to him but he does not remember anything else that happened. I am convinced that the recollection of Davis is correct.
On the morning of the sale Davis sent the following telegram to Schenck: *Page 85 
"Roydhouse farm to be sold at two today. Do you have any instructions or will you be present?"
Schenck testified that he did not receive the message until that afternoon which was too late to enable him to attend the sale.
The sale was held at the designated time. There were present, in addition to Davis, a brother of the complainant, and a brother-in-law of the complainant who was the husband of the former Mrs. Roydhouse. Complainant's brother bid against Davis but refused to raise the bid after Davis had bid $500. Later that afternoon, Schenck telephoned Davis' office and was informed that Mr. Davis had bought the farm. After this conversation nothing seems to have happened for a number of years. Mr. Davis began an action for waste against the life tenant and shortly thereafter this bill was filed; to wit, on November 4th, 1939.
Courts have laid down a rule of "strict scrutiny" relative to transactions between attorney and client. The rule is intended to protect a client against a "strong influence" which arises from the confidential relationship between a lawyer and his client. Generally the cases involve situations where the attorney has attempted to perpetrate a fraud upon his client and thereby benefit to the client's disadvantage. In many cases such transactions are held to constitute contructive fraud.
A rule has developed in our courts which is intended to prevent an attorney from acquiring an interest in the subject-matter of litigation adverse to that of his client where he has acquired special information by reason of his professional relationship with his client. It is generally held that where an attorney purchases land sold by reason of judicial proceedings in which the attorney was employed, he is presumed to have acted for his client. In such cases, the attorney is said to hold the title as trustee for the benefit of his client. Such a purchase, however, if made with the client's consent after full and fair disclosure of the circumstances, is valid. See 7 C.J.S., Attorney andClient § 126 b.
Counsel for the complainant have not cited a case which is actually comparable in circumstances to the one before me. *Page 86 
I find but one case which has not been cited by counsel which, in some respects, is in line with the pending case; to wit,Johnson v. Outlaw, 56 Miss. 541. In that case an attorney recovered separate judgments in favor of A and B against X. With the consent of A the attorney purchased the property at the sale. The court held that such action antagonized B's interest under the second judgment for the main reason that B had no notice of the execution sale. In the pending case complainant had notice of the sale.
Counsel cite the case of Hawley v. Cramer, 4 Cow. (N.Y.)717. In that case the attorney recovered a judgment for several different plaintiffs against the same defendant. Three of the plaintiffs were present at the execution sale and conspired among themselves to bid in the property and divide the anticipated profits to the detriment of their co-plaintiffs. The attorney purchased the property for them. Naturally that was clearly a fraud on the co-plaintiffs.
The principal argument of complainant is that Davis had no right to act for himself and that having bid in the property he was, in contemplation of law, a trustee for complainant.
The high standard to which attorneys are held must be maintained by our courts. While it is proper to prohibit an attorney from taking advantage of his clients it is, on the other hand, proper that a client should not be allowed to take an improper advantage of his attorney.
The fact that Davis explained the situation to Schenck before he would agree to handle his case, and the fact that Davis brought a suit in Chancery on behalf of both clients, and the fact that Mrs. Roydhouse's life interest was firmly established which gave to the judgment a doubtful and uncertain value, must be considered in arriving at a decision in this case. Years elapsed after the first proceedings were finished. Both judgments were revived by Mr. Davis. After the sale Schenck learned that Davis had bid in the property but he did nothing for seven years.
Considering all the evidence submitted to me, I have concluded Mr. Davis did everything that was required of him. In fact he did more than was necessary in an effort to enable Schenck to protect his interest. In fact Mr. Schenck abandoned *Page 87 
his attorney, Davis. Davis had an interest in the Haines judgment under the contingent fee agreement. He had a right to buy the judgment from the executors in order to protect that interest. Schenck endeavors to explain his inaction by saying that he assumed Davis purchased the property for his (Schenck's) benefit. This is not a satisfactory explanation, particularly since Schenck did nothing about it for seven years. A client is required to exercise some degree of diligence, otherwise he is deemed to have waived his rights. I find no moral turpitude in the conduct of Mr. Davis. See 6 C.J., Attorney and Client §209.
I am satisfied that the conduct of Mr. Davis throughout the whole transaction was not improper and did not spring from unfair motives.
Complainant says that Mr. Davis' conduct evidences fraud by reason of the fact that the deed from the sheriff was taken in the name of James Mercer Davis, Jr., his son, and the further fact that the deed was not recorded for sometime. I do not agree with this contention. If Mr. Davis' conduct was proper during the transactions and at the time of sale, his acts thereafter have little or no bearing on the questions here involved.
I conclude that the relief sought should be denied.